IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Oxford Social and       :
Athletic Club,       : No. 2536 C.D. 2015
      : Argued: September 13, 2016
               Appellant       :
      :
              v.       :
      :
Pennsylvania State Police, Bureau       :
of Liquor Control Enforcement       :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION
BY SENIOR JUDGE FRIEDMAN               FILED: December 6, 2016

New Oxford Social and Athletic Club (Club) appeals from the November 12, 2015, order of the Court of Common Pleas of Adams County (trial court) that affirmed the order of the Pennsylvania Liquor Control Board (LCB), which found that the Club violated the Liquor Code[1] and the Local Option Small Games of Chance Act (Chance Act).[2] We affirm.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 - 10-1001.

[2] Act of December 19, 1988, P.L. 1262, *as amended*, 10 P.S. §§328.101-328.915.

The Club, a non-profit corporation, has a liquor license, a club license under the Chance Act, and a small games of chance license issued by the Adams County Treasurer.

From March 28, 2013, through July 29, 2013, the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau), investigated the Club. In a letter dated August 14, 2013, the Bureau notified the Club of four violations, which violations could result in the issuance of a citation. (Letter, 8/14/13, at 1.)[3]

On August 23, 2013, the Bureau issued a citation to the Club containing six counts. Counts 1 to 4 were under the heading "First Cause of Action: The Pennsylvania Local Option Small Games of Chance Act." (Citation, 8/23/13, at 1-2.) Count 1 alleged that on nine separate occasions from August 19, 2012, through April 6, 2013, the Club awarded more than $25,000 in prizes in a seven-day period. (*Id.*) Count 2 alleged that from January 4, 2013, through April 17, 2013, the Club failed to operate the small games of chance in conformity with the Chance Act. (*Id.* at 2.) Count 3 alleged that from January 8, 2013, though May 7, 2013, the Club used funds derived from the operation of the games of chance for purposes other than those authorized by law. (*Id.*) Count 4 alleged that for two years preceding May 13, 2013, the Club failed to maintain complete and truthful records regarding small games of chance. (*Id.*)

---

[3] The Bureau alleged that: (1) the Club failed to maintain complete and truthful records regarding small games of chance; (2) the Club awarded more than $25,000 in small prizes in a seven-day period; (3) the Club used funds derived from the operation of the games of chance for purposes other than those authorized by law; and (4) the Club failed to operate small games of chance in conformity with the Chance Act. (Letter, 8/14/13, at 1.)

Counts 5 and 6 were under the heading "Second Cause of Action: Pennsylvania Liquor Code." (*Id.* at 3.) Count 5 involved the same facts as count 3 whereas count 6 involved the same facts as count 4. The second cause of action contained the following prefatory language:

> WHEREAS, Section []702(g) of the . . . Chance Act, 10 P.S. §328.702(g), states that when a club licensee has committed three or more violations of the . . . Chance Act, the Bureau . . . may enforce a third or subsequent violation of the . . . Chance Act as a violation of the Liquor Code; and

> WHEREAS, the Bureau . . . is in possession of facts which leads it to believe that you have committed a third or subsequent violation of the . . . Chance Act . . . and that such violation constitutes a violation of the Liquor Code . . . .

(*Id.*)

The Club requested a hearing, which an administrative law judge (ALJ) conducted on May 20, 2014. The Club was not represented by a lawyer. However, Jeffrey Topper,[4] the Club president, attended along with counsel for the Bureau. During the proceedings, Topper admitted that the Bureau complied with the applicable notice requirements of the Liquor Code; the Club received notice of the violations; the Club paid out more than $25,000 in a seven-day period; some of the money garnered from the sale of small games of chance was used to pay wages; and the Club did not keep required records for the small games of chance. (N.T., 5/20/14, at 5-6, 30, 48, 50, 69-72.)

---

[4] Topper executed an "Admission, Waiver, and Authorization" form. The ALJ did not accept the form and conducted the hearing.

3

On July 8, 2014, the ALJ sustained counts 1, 3, and 4 but dismissed counts 2, 5, and 6.[5] The ALJ found insufficient evidence to support a violation as to count 2. As to counts 5 and 6, the ALJ determined that the Bureau failed to comply with the notice requirements of section 471 of the Liquor Code, 47 P.S. §4-471. Specifically, the ALJ concluded that whereas the citation contained six counts, the notice of violation previously sent to the Club alleged only four violations "none of which is identified as a Liquor Code or Small Games of Chance violation." (ALJ Adjud., 7/8/14, at 6.) The ALJ also determined that as to counts 5 and 6, the Bureau lacked the authority to cite the Club under both the Chance Act and Liquor Code.

The Bureau appealed to the LCB, arguing that the ALJ committed an error in dismissing counts 5 and 6. The LCB issued an October 20, 2014, order, determining that contrary to the ALJ's determination, the Club had proper notice as to counts 5 and 6. The LCB affirmed the dismissal of count 5, but reversed the ALJ's dismissal of count 6. The LCB concluded that section 702(g) of the Chance Act, 10 P.S. §328.702(g), authorized the Bureau to cite the Club under both the Chance Act and Liquor Code for the third and subsequent violations of the Chance Act, which were contained in the citation even though these violations had not been the subject of a previous final determination.

On November 24, 2014, the Club appealed the LCB's decision to the trial court as to counts 3, 4, and 6 and requested that the trial court conduct a *de novo*

_____

[5] The ALJ imposed a $2,400 fine and 15-day suspension of the Club's license under the Chance Act for the Club's violations.

4

hearing.[6] On March 13, 2015, the Bureau filed a motion in limine, seeking to prohibit the Club from offering testimony contrary to the Club's stipulations at the ALJ's hearing. In response to the motion, the Club averred that Topper was not under oath; Topper was not advised that he was entering into stipulations; and no document entitled "stipulations" was agreed to or executed by Topper. Thus, the Club argued that it had the right to offer testimony and evidence at a *de novo* hearing before the trial court.

In an October 6, 2015, order the trial court granted in part, and denied in part, the motion in limine. Because neither party appealed the ALJ's adjudication to the LCB based on the issue of substantial evidence, the trial court determined that there were no factual issues preserved. The trial court determined that the ALJ's decision as to counts 3 and 4 was final because neither party appealed those counts to the LCB. The trial court limited the scope of the Club's appeal to count 6 and limited the Club's testimony to the issuance of the penalty only.

Thereafter, the trial court issued an opinion and order on November 12, 2015. The trial court accepted the certified record of the proceedings before the ALJ and LCB, offered by the Bureau. The trial court adopted the ALJ's and LCB's findings of fact and concluded that the Club's violation of counts 1, 3, and 4 served as the basis for the Club's violation of count 6. The trial court concluded that section 702(g) of the Chance Act authorized the Bureau to cite the Club under both the

---

[6] The Club originally contested the violation as to count 1 but declined to pursue it. (Trial Ct. Op., 10/6/15, at 3.).

Chance Act and Liquor Code for the third and subsequent violations of the Chance Act contained in the citation.[7] This appeal followed.[8]

The Club initially argues that in accordance with *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 20 (Pa. 1994), the trial court is to review the entire case *de novo* on questions of law and fact. We agree that the trial court's review is *de novo*, but only as to those issues properly preserved by appeal.

Section 471 of the Liquor Code, 47 P.S. §4-471, provides in relevant part:

---

[7] The trial court explained:

> Instantly, the LCB ruled that the background supporting Count 1, and sustained by the ALJ, would constitute the first [Chance Act] violation. Count 2 was dismissed so the allegations supporting Count 3, and sustained by the ALJ, would constitute the second [Chance Act] violation. Count 5 alleged the same conduct as Count 3, and because there were not three [Chance Act] violations at the point, the threshold needed to seek enforcement under the Liquor Code was lacking. Therefore, Count 5 had to be dismissed by the LCB. The background supporting Count 4, and sustained by the ALJ, became the third [Chance Act] violation. Count 6 alleged a violation of the Liquor Code based upon the same conduct alleged in Count 4. Therefore, the LCB found that the threshold was satisfied and the ALJ erred in dismissing Count 6.

(Trial Ct. Op., 10/6/15, at 5.)

[8] This court's review is limited to determining whether the trial court committed an error of law or abuse of discretion. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Wilner*, 687 A.2d 1216, 1218 n.4 (Pa. Cmwlth. 1997).

6

(a) Upon learning of any violation of this act . . . the . . . [B]ureau may . . . cite such licensee to appear before an [ALJ] . . . .

(b) Hearing on such citations shall be held in the same manner as provided herein for hearings on applications for license. Upon such hearing, if satisfied that any such violation has occurred . . . the [ALJ] shall immediately suspend or revoke the license . . . . [A party] aggrieved by the adjudication of the [ALJ], . . . shall [have] a right to appeal to the [LCB]. The appeal shall be based solely on the record before the [ALJ]. . . . [T]here shall be a [further] right to appeal to the court of common pleas in the same manner as herein provided for appeals from refusals to grant licenses.

Section 464 of the Liquor Code, 47 P.S. §4-464, addresses appeals from a refusal to grant a license and provides that:

Such appeal shall be upon petition of the aggrieved party, who shall serve a copy thereof upon the [LCB], whereupon a hearing shall be held upon the petition by the court upon ten days' notice to the [LCB]. . . . The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved . . . .

In accordance with the above, the ALJ held a hearing on the Club's citations. Based on Topper's stipulation of the facts,[9] the ALJ issued an adjudication sustaining counts 1, 3, and 4 and dismissing counts 2, 5, and 6.[10] Section 471(b) of

---

[9] The Club argues that it never entered into a formal stipulation of facts. The Club, however, did not raise this issue before the LCB. As such, it is waived. *See Burns v. Rebels, Inc.*, 779 A.2d 1245, 1250 (Pa. Cmwlth. 2001) (a party's failure to raise issue before the LCB resulted in waiver of that issue).

[10] The Bureau notes that the Club paid the $2,400 fine imposed by the ALJ by July 28, 2014, and served the 15-day suspension of its Chance Act license from September 8-24, 2014.

the Liquor Code provides that any party aggrieved by the ALJ's decision may appeal to the LCB. That appeal is based solely on the record before the ALJ. Thus, the LCB addresses only those issues raised before it. Here, only the Bureau appealed to the LCB, raising two issues: whether the Bureau complied with the notice provisions as to counts 5 and 6; and whether the ALJ erred in dismissing counts 5 and 6 on the basis that the Bureau could not cite the Club for the same conduct under the Chance Act and the Liquor Code. Because neither party appealed as to the remaining counts and the LCB did not address them, the trial court could not consider them in its *de novo* review.

The Club relies on *Pennsylvania State Police Bureau of Liquor Control Enforcement v. Progress Fire Company Home Association*, 55 A.3d 1270, 1272 (Pa. Cmwlth. 2012), and *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Harrisburg Knights of Columbus Home Association*, 989 A.2d 39, 41 (Pa. Cmwlth. 2009), for the proposition that the trial court's review is *de novo.* This court agrees but notes that in those cases, the licensee appealed the ALJ and LCB's determinations. Thus, the licensee preserved issues for *de novo* review. Here, the trial court properly conducted *de novo* review only as to those issues properly preserved and not the entire case.

The Club next argues that the Bureau's August 14, 2013, notice of violation letter was defective and violated the Club's due process rights because it referenced only four of the alleged violations as opposed to all six of the violations. In accordance with 40 Pa. Code §15.41(b)(3), the citation is to contain "[a] brief description of the types and dates of alleged violations with separate counts if

8

separate charges." We agree with the Bureau that the August 14, 2013, letter merely informed the Club that it completed its investigation on July 29, 2013, and informed the Club of four "alleged violations which may result in the issuance of a citation." (Letter, 8/14/13, at 1.) The letter, however, was not a citation. The Bureau did not issue a citation until August 23, 2013, wherein the Bureau informed Club of the six violations. As such, we find no error.

Finally, the Club argues that section 702(g) of the Chance Act does not permit the Bureau to cite a club licensee under both the Chance Act and the Liquor Code when the third gaming violation is contained in the same citation as the first two violations. Specifically, the Club argues that the violations must have occurred separately and been adjudicated in a prior proceeding or proceedings. We disagree.

Section 702(g) of the Chance Act, 10 P.S. §328.702(g) provides:

(1) Except as provided in paragraph (2), a violation of this [Chance Act] by a club licensee shall not constitute a violation of the Liquor Code.

(2) If a club licensee has committed three or more violations of this [Chance Act], the Bureau . . . may enforce a violation of this act as a violation of the Liquor Code.

Section 702(g) of the Chance Act uses the term "violation." A violation is "[a]n infraction or breach of the law." Black's Law Dictionary 1705 (9th ed. 2004). The plain language of the statute does not require a previous adjudication.

9

Thus, if the Bureau charges a club with three Chance Act violations, as it did in this case, the Bureau may also seek to enforce a violation of the Chance Act as a Liquor Code violation. There is no requirement under the Chance Act that a club's violations must have been previously adjudicated before the Bureau can cite a club under section 702 of the Chance Act with a Liquor Code violation.

*Ball Park's Main Course, Inc. v. Pennsylvania Liquor Control Board & Pennsylvania State Police*, 641 A.2d 713, 714 (Pa. Cmwlth. 1994) (*en banc*), does not change the outcome. In that case the trial court affirmed the LCB's refusal to renew a tavern's liquor license because it committed multiple violations of the Liquor Code. The LCB based its decision not to renew the license on nine violations adjudicated against the licensee by the ALJ and two unadjudicated violations. This court determined that the nine adjudicated violations supported the decision not to renew the license. However, we determined that the LCB should not have considered the two citations that were not yet adjudicated by the ALJ. *Id*. at 718. The ALJ is the factfinder and vested with the authority to adjudicate citations, and the LCB is limited to an appellate role in reviewing the ALJ's decision. *Id.* & n.10. Thus, *Ball Park* stands for the proposition that the ALJ, not the LCB, adjudicates citations. Only after the ALJ finds that the licensee committed the charged violation can the LCB consider that conviction with respect to a liquor license renewal.

The issue in this case is whether the Bureau can charge the Club under the Liquor Code when it only has evidence of three or more *charged* violations of the Chance Act. Although the Club argues that the Liquor Code violations should not have been brought in the same citation, (Club's Br. at 51), there is no such prohibition

10

in the Chance Act. Here, the Bureau charged the Club with violations of the Chance Act and the Liquor Code in a single citation. The violations occurred at separate times and did not result from a single incident. Arguably, the Bureau could have sent separate citations for each Chance Act violation and Liquor Code violation alleged. However, whether all charges are contained in the same or separate citations, the net effect is the same. The Bureau can cite a licensee for a violation under both the Chance Act and Liquor Code.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

Judge Cosgrove did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Oxford Social and : 
Athletic Club, : No. 2536 C.D. 2015
 :
Appellant :
 :
v. :
 :
Pennsylvania State Police, Bureau :
of Liquor Control Enforcement :

# O R D E R

AND NOW, this 6<u>th</u> day of <u>December</u>, 2016, we hereby affirm the November 12, 2015, order of the Court of Common Pleas of Adams County.

_____
ROCHELLE S. FRIEDMAN, Senior Judge