IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, :
Bureau of Liquor Control :
Enforcement, :
          Appellant :
: Nos. 1014 & 1015 C.D. 2021
      v. :
: Submitted: December 4, 2023
Wood Brothers Bar, Inc. :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                        FILED: January 9, 2024


      The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals from the order entered in the Philadelphia County Court of Common Pleas (trial court) on September 10, 2021, which granted the appeals of Wood Brothers Bar, Inc. (Licensee) and overturned the decisions of the Pennsylvania Liquor Control Board (the Board) and the administrative law judge (ALJ). At issue are two citations charging Licensee with separate violations of Section 493(34) of the Liquor Code,[1] 47 P.S. § 4-493(34), which restricts amplified music at liquor-licensed premises.[2] The matter returns to this Court following remand for the trial court to conduct a *de novo* review. Upon review, we affirm.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001.

[2] In relevant part, Section 493(34) of the Liquor Code states that "a licensee may not use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard beyond the licensee's property line[.]" 47 P.S. § 4-493(34).

# I. BACKGROUND[3]

Licensee's property, commonly known as Woody's, is located at 200-202 S. 13th Street in Philadelphia (the Property). On Friday, January 20, 2017, at 11:25 p.m., Bureau enforcement officer Danielle Shields walked by the Property. Shields walked beyond the property line and could hear music emanating from the building. On Friday, February 3, 2017, at 9:30 p.m., Shields returned to the premises and parked a half-block away from the Property. When the Property's doors opened, Shields heard music emanating up to 50 feet away. On March 21, 2017, the Bureau issued a citation for the January 20th and February 3rd incidents.

On Thursday, June 1, 2017, at 10:30 p.m., Bureau enforcement officer Chad Vail arrived at the Property and heard music emanating from the premises. Vail walked 165 feet away, but the music from Licensee's Property could still be heard. On Saturday, June 3, 2017, at 12:05 a.m., Vail returned to the Property and heard music emanating from the premises 75 feet away. Vail spoke with Edward Slusser, the man in charge of the Property, and notified him that a citation would be issued. On July 11, 2017, the Bureau issued another citation for the June 1st and June 3rd incidents.

Licensee contested the citations. On May 9, 2018, the parties appeared before an ALJ for a hearing. At the hearing, Bureau enforcement officers Shields and Vail testified about their investigations. William Weiss, the principal of Licensee, testified regarding Licensee's efforts to manage noise on the premises, including reading a decibel meter every night in an attempt to comply with local noise regulations; the lack of prior noise complaints; Weiss' belief that the noise came from neighboring licensed establishments; and decibel readings from the

---

[3] Unless otherwise stated, we base the recitation of facts on the trial court's opinion filed August 20, 2021. *See* Trial Ct. Op., 8/20/21, at 1-3 (unpaginated).

Property and from a licensed establishment across the street, which indicated that the noise from the Property was lower.[4]

Subsequent to the hearing, the ALJ issued findings of fact and conclusions of law, finding that the Bureau had introduced sufficient evidence to establish that Licensee had violated Section 493(34) of the Liquor Code on the two citations.[5] The ALJ imposed a $750.00 penalty. Licensee appealed to the Board, which affirmed the ALJ's decision.

Licensee appealed to the trial court. On February 5, 2020, the trial court held a hearing and granted the Bureau's motion to incorporate the testimony and exhibits that were presented to the ALJ. Additionally, the trial court heard oral argument but did not take additional evidence. Following the hearing, the trial court entered an order sustaining Licensee's appeal and reversing the decision of the Board. The order did not provide a rationale or basis for the trial court's decision.

On March 4, 2020, the Bureau timely appealed to this Court. The trial court issued an opinion in accordance with Pa.R.A.P. 1925(a) but did not issue explicit findings of fact or conclusions of law. The opinion did not explain the trial court's rationale. On July 15, 2021, this Court vacated the order of the trial court and remanded the matter for the trial court to conduct a full *de novo* review. *See Pa. State Police, Bureau of Liquor Control Enf't v. Wood Bros. Bar, Inc.* (Pa. Cmwlth.

---

[4] At the hearing, Weiss testified regarding the Property's lack of history of violations and notice of any noise complaints, and his employment of a police detail to keep patrons safe. *See* Notes of Testimony (N.T.), 3/9/18, at 52-53. When Licensee's counsel began to question Weiss about whether a local councilman's office had raised concern about noise violations on the Property, the Bureau objected to the line of questioning. *See id.* at 53-60. The ALJ stated that she would "allow it in terms of mitigation for what it's worth." *See id.* Licensee's counsel then continued to question Weiss about decibel readings and other properties in the area. *See id.*

[5] As noted above, although two citations were issued, each citation had multiple dates of alleged violations.

Nos. 282 and 284 C.D. 2020, filed July 15, 2021). On remand, we instructed the trial court "to issue a new opinion which sets forth findings of fact, including credibility determinations, and the reasons for its disposition." *See id.*, slip. op., at 5.

On August 20, 2021, the trial court issued an opinion sustaining Licensee's appeal, reversing the decision of the Board, and explaining its *de novo* review. The trial court filed an order on September 10, 2021. The Bureau timely filed an appeal to this Court on September 16, 2021.[6]

## II. ISSUE

On appeal, the Bureau raises a single issue for our review: did the trial court err and abuse its discretion by overturning the decisions of the Board and the ALJ that Licensee violated Section 493(34) of the Liquor Code, 47 P.S. § 4-493(34). *See* Bureau's Br. at 10. According to the Bureau, it introduced uncontroverted evidence that amplified music emanated from the premises and was heard beyond Licensee's property line. *See id.*

## III. DISCUSSION[7]

### A. The Parties' Arguments

The Bureau argues that a licensee is strictly liable for Liquor Code violations. *See* Bureau's Br. at 21. According to the Bureau, if *any* electronically

---

[6] It appears that the Bureau prematurely filed an appeal on September 2, 2021. However, the Bureau refiled its appeal following the entry of the trial court's order.

[7] "This Court's standard of review in a Liquor Code enforcement appeal is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Pa. State Police, Bureau of Liquor Control Enf't v. Big D Rests., LLC*, 149 A.3d 890, 896 n.9 (Pa. Cmwlth. 2016) (citation omitted). "As fact finder, the trial court is free to make findings on the evidence and reach its own conclusions in citation/enforcement appeals under [Section 471 of the Liquor Code, 47 P.S. § 4-471]. Our review of evidentiary issues is to determine whether substantial evidence supports the trial court's factual findings." *Pa. State Police, Bureau of Liquor Control Enf't v. Goodfellas, Inc.*, 850 A.2d 868, 872-73 (Pa. Cmwlth. 2004) (citation omitted).

4

amplified music can be heard beyond the property line, a licensee is in violation of the Code. *See id.* The Bureau further contends that the trial court's decision was not based on substantial evidence and relies on speculation, manufactures credibility issues, and required proof that was not relevant to the determination of whether Licensee violated the Liquor Code. *See id.* at 23. The Bureau avers that there is no decibel level required to prove a violation of the Liquor Code and that, accordingly, the trial court erred in faulting the enforcement officers for failing to record decibel readings and in considering facts not in the record. *See id.* at 23-24.

Finally, the Bureau contends that the trial court erred in crediting Weiss' testimony, which it alleges was admitted solely for mitigation purposes and not for purposes of the facts supporting the violation. *See id.* at 28-29. Although Weiss testified generally regarding Licensee's practices around amplified music and general premises safety, the Bureau asserts that Weiss was not present on any of the dates in question and thus, his testimony was not relevant and could not be considered substantial evidence to support the trial court's order. *See id.* at 29. However, even if the testimony was considered for exculpatory purposes, the testimony did not contradict the testimony of the Bureau's witnesses. *See id.*

In response, Licensee contends that the trial court properly conducted a *de novo* review, in which it was not bound by either the ALJ's or the Board's decisions. *See* Licensee's Br. at 4. According to Licensee, the Bureau chose to limit its evidence to testimony from two officers, whose testimony need not be taken as the "iron clad" truth. *See id.* at 4-5. Licensee further contends that the officers failed to support their testimony with any objective evidence, such as a decibel meter or other sound measuring device. *See id.* at 5. Thus, according to Licensee, it was not an abuse of discretion for the trial court to credit Licensee's own testimony and

5

evidence regarding decibel readings. *See id.* Licensee also rejects the Bureau's contention that the testimony of its principal was admitted for mitigation purposes only. *See id.* at 6. According to Licensee, the trial court, when conducting a *de novo* review, was authorized to consider this evidence for any purpose. *See id.* at 6.

## B. Analysis

The Bureau is empowered to enforce violations of the Liquor Code with license suspensions or revocations or fines. *See* Section 471 of the Liquor Code, 47 P.S. § 4-471. Upon learning of any violation of the Code, the Bureau may cite a licensee to appear before an ALJ. *See id.* at § 4-471(a). After a hearing, if "satisfied that any such violation has occurred," the ALJ shall immediately suspend or revoke the license or impose a fine. *See id.* A party aggrieved by an adjudication of the ALJ has the right to appeal to the Board; such an appeal is based solely on the record developed before the ALJ. *See id.* at 4-471(b). There is a further right to appeal to the court of common pleas "in the same manner as herein provided for appeals from refusals to grant licenses." *See id.*

Section 464 of the Liquor Code addresses appeals from license refusals. *See* 47 P.S. § 4-464. This section provides that the appeal shall be upon petition of the aggrieved party, who shall serve a copy thereof upon the Board. *See id.* At that time, "a hearing shall be held upon the petition by the court upon ten days' notice to the [Board]." *See id.*

The court shall hear the application "*de novo* on questions of fact, administrative discretion and such other matters as are involved[.]" *See id.* The trial court may review the matter *de novo* on questions of both fact and law and must either sustain or overrule the action of the Board. *New Oxford Soc. & Athletic Club v. Pa. State Police, Bureau of Liquor Control Enf't*, 151 A.3d 286, 290 (Pa. Cmwlth.

6

2016); *see also* 47 P.S. § 4-464. This is "without regard to whether the same or different findings of fact or conclusions of law are made." *Pa. State Police, Bureau of Liquor Control Enf't v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 19 (Pa. 1994).

In *de novo* appeals from the Board, "the trial court must receive the record of the proceedings before the Board, if it is offered, and is permitted to take additional evidence." *Hotel Liquor License #H-2892 v. Tabs Ent., Inc.*, 125 A.3d 487, 490 (Pa. Cmwlth. 2015) *see also Pa. State Police, Bureau of Liquor Enf't v. Kelly's Bar, Inc.*, 639 A.2d 440, 442 (Pa. 1994) (holding that the Bureau is not required to retry the case in its entirety and that the trial court may consider both the record submitted by the Board and any additional evidence properly received at the *de novo* hearing before making its findings of fact and conclusions of law).

The trial court may "make its own findings and reach its own conclusions based upon those findings even when the evidence it hears is substantially the same as the evidence presented to the Board." *Two Sophia's, Inc. v. Pa. Liquor Control Bd.*, 799 A.2d 917, 919 (Pa. Cmwlth. 2002). "As the ultimate fact-finder, the trial court is empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony." *Hotel Liquor License #H-2892*, 125 A.3d at 490. Finally, the trial court may reassess credibility determinations "whether the [trial] court hears the evidence anew, takes additional testimony or merely reviews the official transcript of the proceedings before the Board." *See Pa. Liquor Control Bd.*

7

*v. Mignona*, 548 A.2d 689, 692 (Pa. Cmwlth. 1988) (quoting *Adair v. Pa. Liquor Control Bd.*, 546 A.2d 19, 25 (Pa. 1988)).[8]

The Bureau bears the burden of proof in a citation proceeding, and it must prove its case by a preponderance of the evidence. *Banks Appeal*, 481 A.2d 709, 711 (Pa. Cmwlth. 1984); *In re Omicron Enters.*, 449 A.2d 857, 859 (Pa. Cmwlth. 1982). Generally, licensees are held strictly liable for violations of the Liquor Code that occur on the licensed premises. *Pa. State Police v. S & B Rest., Inc.*, 52 A.3d 513, 520 (Pa. Cmwlth. 2012).

In this case, Licensee was cited for violations of Section 493(34) of the Liquor Code. That section provides that "[n]otwithstanding any law or regulation to the contrary, a licensee may not use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard beyond the licensee's property line[.]" 47 P.S. § 4-493(34).

Following an appeal from the Board, the trial court conducted a *de novo* review of the record developed before the ALJ. Notably, the trial court did not find the Bureau's enforcement officers credible. *See* Trial Ct. Op. at 5-8 (unpaginated); *see also* N.T., 3/9/18, at 9-27, 28-44. The trial court characterized Shields' testimony as "at best . . . she stood [50] feet away and heard music emanating from the establishment" and "[a]t worst [Shields'] testimony is backed up with no data and

---

[8] *Adair* was decided based upon an older version of Section 471 prior to the implementation of the ALJ process, and which specifically articulated the standard of review for the trial court. *Adair*, 546 A.2d at 22 (citing the Act of April 12, 1951, P.L. 90, art IV, § 471, *as amended* by the Act of June 3, 1971, P.L. 143, No. 6). The current version of Section 471 provides for hearings before ALJs prior to appeals to the Board or the trial court and directs us to Section 464 for the trial court's standard of review. *See* 47 P.S. §§ 4-464, 4-471. Despite these subsequent amendments, *Mignona* remains controlling precedent. *See*, *e.g.*, *Cantina Gloria's Lounge, Inc.*, 639 A.2d at 19; *Mignona*, 548 A.2d at 692.

the officer could have heard ambient loud music from any number of other restaurants or bars that she admits she did not go into." Trial Ct. Op. at 6; *see also* N.T., 3/9/18, at 8-26. The court also rejected Vail's testimony that no other music was playing in the area on June 1st, noting that it was a late summer night in a busy commercial corridor with numerous other bars and restaurants. *See* Trial Ct. Op. at 6-7; *see also* N.T., 3/9/18, at 28-44, 52-60. The trial court reasoned that if Vail was standing 165 feet away from the establishment, as he had testified, it was likely that he was hearing ambient noise from another establishment rather than the premises. *See* Trial Ct. Op. at 6-7; *see also* N.T., 3/9/18, at 28-44. Additionally, the trial court observed that the citations were all issued late at night either on Thursdays, Fridays, or Saturdays, in a busy commercial corridor in which many bars and restaurants would likely be playing music. *See* Trial Ct. Op. at 5-8. In summary, the trial court rejected the officers' testimony that they had heard music coming from Licensee's premises.

In contrast, the trial court found Weiss' testimony "highly credible." *See id.* Weiss testified that for the past decade he has hired on-duty police officers[9] to ensure the safety of the patrons and the neighborhood and that there have been zero noise complaints against the establishment in that time. *See id.* The trial court specifically noted Weiss' practice of monitoring and recording his own decibel meter readings to ensure that the establishment did not violate local noise ordinances. *See id.*; *see also* N.T., 3/9/18, at 47-67. The trial court observed that these efforts were successful because, prior to the citations at issue herein, Weiss testified that he had not received any noise citations from local police. *See* Trial Ct. Op. at 7.

---

[9] *See* N.T., 3/9/18, at 51-52.

The Bureau argues that the trial court erred in crediting Weiss' testimony as exculpatory because it was admitted by the ALJ only for mitigation purposes. *See* Bureau's Br. at 28-29. However, this argument is misplaced. First, regardless of the ALJ's purpose in admitting this evidence, upon *de novo* review of the record, the trial court was free to consider this evidence anew, including for exculpatory purposes. *New Oxford Soc. & Athletic Club*, 151 A.3d at 290; *see*, *e.g.*, *Big D Restaurants*, 149 A.3d at 895 (discussing evidence and testimony introduced by licensee in opposition to citation issued under the Liquor Code). Second, and more importantly, mitigation of Licensee's liability was not a valid consideration. As noted, citations issued for violations of the Liquor Code are considered under a strict liability standard. *S & B Rest., Inc.*, 52 A.3d at 520. However, a licensee is also subject to vicarious criminal liability for acts committed on his premises. *I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pa. Liquor Control Bd.*, 969 A.2d 642, 648–49 (Pa. Cmwlth. 2009) (citing *Pa. Liquor Control Board v. TLK, Inc.*, 544 A.2d 931, 933 (Pa. 1988)). In such cases, strict liability is unwarranted, and a licensee may defend his license by demonstrating that he took substantial affirmative steps to guard against a known pattern of illegal activities. *TLK, Inc.*, 544 A.2d at 934. Thus, evidence admitted for mitigation purposes may be relevant to establish "what quantum of guilty knowledge or intent" should be assigned to a licensee. *See id.* at 933. These concerns are not relevant under the strict liability standard. *S & B Rest., Inc.*, 52 A.3d at 520.

Finally, the trial court, sitting *de novo*, is entitled to "determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony." *Hotel Liquor License #H-2892*, 125 A.3d at 490. The trial court did so, ultimately concluding that the Bureau had not proven

that the noise was from Licensee's establishment and not one of "innumerable . . . other restaurants and bars playing music outdoors." *See* Trial Ct. Op. at 8 (unpaginated). These credibility findings are supported by the substantial evidence of record. *Goodfellas, Inc.*, 850 A.2d at 872-73.

## IV. CONCLUSION

Upon remand from this Court, the trial court conducted a *de novo* review of the record, made detailed findings and credibility determinations, and concluded that the Bureau failed to establish that Licensee had violated Section 493(34) of the Liquor Code. It therefore granted Licensee's appeals and overruled the decision of the Board. Upon review, substantial evidence supports the findings and credibility determinations of the trial court. Accordingly, we affirm.

LORI A. DUMAS, Judge

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, : 
Bureau of Liquor Control : 
Enforcement, : 
               Appellant : 
             :   Nos. 1014 & 1015 C.D. 2021
          v. : 
             : 
Wood Brothers Bar, Inc. : 

# **O R D E R**

AND NOW, this 9th day of January, 2024, we AFFIRM the decision of the Philadelphia County Court of Common Pleas, entered September 10, 2021.

_____
LORI A. DUMAS, Judge